UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-24327-CV-SEITZ
(99-00806-CR-HURLEY)
MAGISTRATE JUDGE REID

CURTIS ANDERSON,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## **REPORT OF MAGISTRATE JUDGE**

### I.    Introduction

This matter is before the Court on Movant's amended motion to vacate, filed pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his conviction and sentence entered following a jury verdict in Case No. 99-00806-HURLEY. [CV-ECF No. 17].[1] Movant was convicted of conspiracy to possess with intent to distribute cocaine, as well as attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Counts 1 and 2); carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 3); and illegal

---

[1] This Report uses the citation "CR-ECF ___" to reference docket entries in the underlying criminal Case No. 99-00806-HURLEY. This Report uses the citation "CV-ECF ___" to reference docket entries in the instant federal habeas case.

possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 4). [CR-ECF No. 99].

This cause has been referred to the undersigned for consideration and report pursuant to U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-02; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed Movant's amended motion [CV-ECF No. 17]; all pertinent portions of the underlying criminal file, including the trial transcripts and transcripts of the three sentencing hearings; all pertinent portions of prior habeas proceedings; as well as the government's response to the Court's order to show cause and its accompanying exhibits. [CV-ECF Nos. 20, 21, and 46]. The Court set an evidentiary hearing on Movant's first claim that counsel failed to file a requested appeal and appointed counsel on Movant's behalf. [CV-ECF No. 22]. The undersigned held the evidentiary hearing on November 5, 2019.[2] [*See* Evid. Hear. Tr.]. Accordingly, the testimony presented at Movant's evidentiary hearing was also considered in preparation for this Report.

For the reasons stated below, Movant's claims fail on the merits. Thus, the motion to vacate should be DENIED.

---

[2] This Report uses the citation "Evid. Hear. Tr." to reference the transcript of the evidentiary hearing held on November 5, 2019.

## II.    Claims

Construing the § 2255 motion liberally as afforded *pro se* litigants, pursuant

to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Movant raises claims against two

attorneys as follows:

1. Attorney Fletcher Peacock failed to file a requested appeal following Movant's third sentencing in 2017. [CV-ECF 17 at 5, 15-17].

2. Attorney Fletcher Peacock failed to object to the 4-level leadership role adjustment where Movant and the cooperating codefendant were only in a "buyer-seller" relationship. [*Id.* at 6, 18].

3. Movant claims he is "actually innocent" of § 924(c) in light of "*Bailey v. U.S.*"; and Attorney Eric Cohen was ineffective at the 2000 trial for failing to object to the court's erroneous jury instructions directing jurors to find him guilty of constructive possession. [*Id.* at 8, 19].

4. Movant claims he is "actually innocent" because Attorney Cohen was ineffective at the 2000 trial for failing to object to the court's redaction of the indictment as to the type of firearm possessed by Movant. [*Id.* at 9, 20]. According to Movant, at trial, Donte Anderson testified the firearm was a nine-millimeter rather than a 40-caliber Glock semiautomatic pistol as alleged in the Indictment; and the government was required to make a finding as to the type of pistol. [*Id.* at 20].

## III.    Procedural History

### A.  Trial, Initial Sentencing, and Direct Appeal

3

The district court appointed Mr. Cohen[3] to represent Movant at his criminal

trial. [CR-ECF No. 68]. On June 12, 2000, a jury found Movant guilty of all four

counts as alleged in the Indictment. [CR-ECF No. 99]. The Court entered a notice of

its intention to consider an upward departure from the sentencing guidelines on the

grounds that Movant "suborned perjury by presenting testimony from his brother,

…that [Movant] came to the scene of the crime intending to participate in a

transaction involving stolen vehicles as opposed to a drug transaction." [CR-ECF

No. 97]. Movant's first sentencing hearing occurred on October 13, 2000; and

counsel objected to the career criminal enhancement and that retaliating against a

witness was not a crime of violence, a predicate offense for the Armed Career

Criminal Act. [CV-ECF No. 46-7]. Movant was sentenced to 360 months for Counts

1, 2, and 4, and a consecutive life sentence for Count 3. [CR-ECF No. 134].

Movant filed a direct appeal and raised three issues: two regarding his

conviction and one as to his sentence. [CR-ECF No. 135; CV-ECF 46-1 at 37[4]]. The

Eleventh Circuit vacated Movant's sentence and remanded the case for resentencing

in light of the government's concession that the application of the "three strikes"

---

[3] At that time, Mr. Cohen was in private practice. When Mr. Cohen represented Movant at his
habeas proceeding in Case No. 14-22306-CV-Hurely, he was a federal public defender. [*See*
Movant's testimony at the evidentiary hearing in the instant case]. *See* Evid. Hear. Tr. at 10.

[4] At the second sentencing hearing, Mr. Cohen explained the history of the direct appeal and that
Movant had agreed to withdraw his two arguments concerning conviction because the government
agreed to confess error. [CV-ECF 46-1, p. 37].

4

mandatory life imprisonment provisions of 18 U.S.C. § 3559(c) was error. [CR-ECF Nos. 150; CV-ECF No. 46-1 at 4].

## B. Movant's Second Sentencing

In preparation for the second sentencing hearing, the court ordered a revised presentence report (PSR). [CR-ECF No. 152]. Movant's base offense level, found in U.S. Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(4) (U.S. Comm'n 2000), provided for a base offense level of 32 because the amount of cocaine was more than five kilograms but less than 15 kilograms. [PSR ¶ 29]. Because Movant was the organizer of the criminal activity involving five participants, he was assessed a four-level adjustment pursuant to § 3B1.1(a). [PSR ¶ 32]. Movant received a two-level adjustment for obstructing justice. [PSR ¶ 33]. Accordingly, Movant's adjusted offense level was 38. [PSR ¶ 34]. Movant was assessed a total of thirteen criminal history points, which established a criminal history category of VI. [PSR ¶ 52].

Movant was also determined to be an armed career criminal under 18 U.S.C. § 924(e), the armed career criminal act (the "ACCA"), and a career offender under U.S.S.G. § 4B1.4(a) [PSR ¶ 36, 52]. As a career offender, his offense level was 37, but because his adjusted offense level was already determined to be 38, it remained at 38. [PSR ¶ 52].

Based on a total offense level of 38 and a criminal history category of VI, the guideline imprisonment range for Counts 1 and 2 was 360 months and, as to Count

4, was 360 months to life in prison. [PSR ¶ 94]. For Count 3, the guideline sentence was no less than five years in prison as required by statute. [*Id.*].

The government moved for an upward departure. [CR-ECF No. 153]. Movant filed a statement acknowledging his participation in the charged offenses and that he was carrying a 40-caliber Glock during the drug transaction. [CR-ECF No. 154 at 2].

On August 31, 2001, Movant appeared for his second sentencing hearing, again represented by his trial counsel, Mr. Cohen. [CV-ECF 46-1]. At sentencing, the Court considered the statements of the parties and various factors, including Movant's significant criminal history, and sentenced Movant to 360 months for Counts 1 and 2, a concurrent life sentence for Count 4, and five years in prison for Count 3 to run consecutive to the sentences imposed for Counts 1, 2, and 4, followed by a six-year period of supervised release. [*Id.* at 44-49; *see also* Judgment CR-ECF No. 155].

Movant timely filed a direct appeal in Case No. 01-15097-II. [CR-ECF No. 156]. On December 21, 2001, the Eleventh Circuit granted Movant's motion to dismiss his appeal with prejudice. [CR-ECF NO. 165]. Movant's initial judgment became final on March 22, 2002, ninety days after his appeal was dismissed following resentencing. *See generally Clay v. United States*, 537 U.S. 522, 532 (2003) ("We hold that, for federal criminal defendants who do not file a petition for

certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires.").

### C.  Pursuit of Post-Conviction Relief & Third Sentencing Hearing

On or about June 20, 2014, Movant filed his first *pro se* motion to vacate pursuant to 28 U.S.C. § 2255 in Case No. 14-22306-CV-Hurley. [CR-ECF No. 201]. Movant claimed he was "actually innocent" under the ACCA because one of the predicate offenses (retaliating against a witness) is not a violent felony within the meaning of 18 U.S.C. § 924(e), given *Descamps v. United States*, 133 S. Ct. 2275 (2013). (Case No. 14-22306-CV-Hurley, ECF Nos. 1, 3). The court initially denied the motion as time-barred; and Movant appealed. [*Id.,* ECF Nos. 14, 15]. Attorney Peacock was appointed to represent Movant. *See* Case No. 16-22853-CV-Hurley, ECF Nos. 6, 9, 10]. Movant's former trial counsel, Mr. Cohen, also represented Movant in the habeas proceeding. [*Id.,* ECF No. 29]. During the course of the appeal, the government conceded Movant was entitled to habeas relief as a matter of law under the ACCA in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *United States v. Esprit*, 841 F.3d 1235 (11th Cir. 2016). [Case No. 14-22306-CV-Hurley, ECF No. 23].

As a result, on October 31, 2017, Movant appeared for his third sentencing hearing represented by *both* Mr. Peacock and Mr. Cohen. [CR-ECF No. 229 at 2]. Mr. Peacock argued Movant's prior conviction for retaliation against a witness was

not a crime of violence and objected to the court's reliance on the PSR or a nolo plea for purposes of determining whether a prior conviction is a crime of violence. [*Id.* at 17-23, 30, 36, 39, 41, and 45]. The court determined that although Movant no longer qualified as an armed career criminal under the ACCA, he was still a career offender under the sentencing guidelines. [*Id.* at 46]. Movant's offense level was reduced from 38 to 36 but his criminal history category remained as VI; and his sentencing guideline range unchanged at 360 months to life. [*Id.* at 48-49]. This was necessarily so because, pursuant to U.S.S.G. § 4B1.1(c)(2), Movant was convicted of violating § 924(c) for carrying a firearm during and in relation to a drug trafficking crime. [*Id.* at 49].

Mr. Cohen advocated on Movant's behalf for a sentence at the bottom of the guidelines -- a thirty-year sentence. [*Id.* at 55-59, 60-74]. Movant made a statement on his own behalf expressing remorse and asserting he was rehabilitated. [*Id.* at 75-77]. The government recommended a combined sentence of 40 years. [*Id.* at 87]. The court maintained that Movant's criminal history was serious and dangerous. [*Id.* at 88-89, 91-93]. Still, the court imposed a sentence *below* the guidelines -- a term of 240 months for Count 1, 240 months for Count 2, and 120 months for Count 4 all to run concurrently. [*Id.* at 97]. The court imposed a 60-month sentence for Count 3, to be served consecutively. [*See also* Amended Judgment. [CR-ECF No. 222].

Movant was also sentenced to a six-year term of supervised release for all counts to run concurrently. [*Id*.].

At no point during the sentencing hearing did Movant indicate that he was dissatisfied with either counsel, that he was unhappy about what his attorneys presented, nor did he mention that he was interested in appealing. In short, nothing in the record suggests Movant was dissatisfied with the outcome of proceeding. Movant did not appeal.

### D. Evidentiary Hearing in Instant Habeas Proceeding

Nearly one year later, Movant filed the instant habeas proceeding followed by an amended motion listing four grounds for relief. [CV-ECF No. 1, 17]. The government filed a response to this Court's order to show cause. [CV-ECF No. 20]. Movant's claim that his counsel, Mr. Peacock, failed to file a requested appeal following the third sentencing hearing warranted an evidentiary hearing. [CV-ECF No. 22]. The court appointed counsel and held an evidentiary hearing on November 5, 2019. [CV-ECF No. 47].

This Report follows.

### IV.    Threshold Issues - Timeliness

To the extent the government asserts that certain claims are procedurally barred or that the instant motion is successive, the assertion is unsupportable. [CV-ECF No. 20]. The Antiterrorism and Effective Death Penalty Act ("AEDPA")

created a limitation for a motion to vacate. Pursuant to 28 U.S.C. § 2255(f), a one-year period of limitations applies to a motion under the section. The one-year period runs from the latest of:

> (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from filing by such governmental action;
>
> (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence.

*See* 28 U.S.C. § 2255(f)(1)-(4). "Typically, the applicable triggering date is 'the date on which the judgment of conviction becomes final.'" *Beeman v. United States*, 871 F.3d 1215, 1219 (11th Cir. 2017) (*en banc*), *cert. den'd,* No. 18-6385, 2019 WL 659904 (2019) (quoting *Drury v. United States,* 507 F.3d 1295, 1296 (11th Cir. 2007); § 2255(f)(1)).

Because Movant received habeas relief for his *Johnson* claim and was resentenced on **October 31, 2017**, for the purposes of AEDPA, Movant received a a new judgment pursuant to § 2255(f)(1). Movant's conviction and sentence became final fourteen days later, on **November 14, 2017**, when the time to file a direct appeal

10

expired. Movant had until **November 14, 2018**, to file the instant § 2255 motion; thus, the motion is not successive.

## V.   Applicable Law

### A.   Standard of Review of Section 2255 Motions

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). Thus, relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *United States v. Frady*, 456 U.S. 152, 165 (1982); *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). If a court finds a claim under § 2255 to be valid, the court shall vacate and set the judgment aside and shall discharge the prisoner, grant a new trial or correct the sentence. 28 U.S.C. § 2255. The burden of proof is on Movant, not the government, to establish that vacatur of the conviction or sentence is required. *Beeman v. United States*, 871 F.3d 1215, 1221-1222 (11th Cir. 2017).

To overcome a procedural default arising from a claim that could have been, but was not raised on direct appeal, Movant must demonstrate: (1) cause for failing to raise the claim and resulting prejudice; or, (2) that a miscarriage of justice excuses the procedural default because Movant is actually innocent. *See McKay v. United States*, 657 F.3d 1990, 1996 (11th Cir. 2011). The actual innocence exception is exceedingly narrow in scope as it concerns a petitioner's "actual" innocence, rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1159, 1171 (11th Cir. 2001).

### B. Assistance of Counsel Principles

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Harrington v. Richter*, 562 U.S. 86, 104 (2011). If the movant cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. *Strickland*, 466 U.S. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). To establish prejudice, the movant must establish that, but for counsel's deficient performance,

the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant, therefore, must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

It is beyond dispute that habeas petitioners and movants bear the burden of proof in habeas proceedings. *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008); *Hill v. Linaham*, 697 F.2d 1032, 1036 (11th Cir. 1983). *See also* 28 U.S.C. § 2255(b), (e); Rule 2 and 4 of the Rules Governing Section 2255 Cases. This axiom is so well-settled that *Strickland* itself placed the burden of proof on habeas litigants, who, like Movant, seek to invoke the Sixth Amendment doctrine. *See generally Strickland*, 466 U.S. at 695-96; *Shiver v. United States*, 619 F. App'x 864, 865 (11th Cir. 2015). Thus, by requiring habeas litigants to bear the burden of showing constitutional error, criminal proceedings are treated as "valid until proven otherwise." *Occhicone v. Crosby*, 455 F.3d 1306, 1310 (11th Cir. 2006).

The law is clear that counsel's failure to file a direct appeal after being requested to do so by his client results in a *per se* constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); *United States v. Stanton*, 397 F. App'x 548, 549 (11th Cir. 2010) (quoting *Flores-Ortega, supra.*).

There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." *Roe v. Flores-Ortega*, 528 U.S. at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken--i.e., the defendant expressed to his attorney a desire to appeal. *Id.*; *see also, Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005).

Even when a defendant has not specifically instructed his counsel to file an appeal, in order to determine whether counsel performed deficiently, a court must inquire into whether counsel in fact consulted with the defendant about an appeal. *Roe v. Flores-Ortega*, 528 U.S. at 478. "If so, the attorney has only acted

14

unreasonably if he has ignored the client's wishes to appeal the case…If not, the court must further inquire whether the attorney had an affirmative duty to consult." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Roe v. Flores-Ortega*, 528 U.S. at 478). The duty to consult arises when either: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing. *Id*. (citing *Roe v. Flores-Ortega*, 528 U.S. at 480). "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe v. Flores-Ortega*, 528 U.S. at 484.

## VI.   Discussion

### A.  Claim 1 – Counsel Was Not Ineffective for Failing to File an Appeal Following Movant's Third Sentencing Hearing

In **Claim 1**, Movant claims that his attorney, Mr. Peacock, failed to file a requested appeal following Movant's third sentencing hearing. [CV-ECF 17 at 5]. Movant claims that prior to entering the courtroom for sentencing, he had a conference with both attorneys (Peacock and Cohen) about the sentencing hearing. [*Id.* at 5, 15]. Mr. Cohen informed Movant the government was seeking a 40-year sentence and needed Movant's authorization to request a 30-year sentence. Movant states he did not agree and was not authorizing counsel to seek a 30-year sentence but was willing to concede to a 25-year sentence. [*Id*.]. Movant further asserts that

15

after the sentencing hearing, he immediately told Mr. Peacock, "I want to appeal his ruling"; and counsel responded, "don't worry about it, we will. He's wrong on this one." [*Id.* at 15]. Movant claims that during the sentencing hearing he also expressed to counsel that the enhancement notice was defective and misleading; and counsel responded, "I'm not sure if you're right…but we'll appeal it. [*Id.* at 16]. Movant also claims when the Marshals escorted him from the courtroom, he told counsel, "I want to appeal this," that counsel responded he would come to the jail to discuss it, but Mr. Peacock never came to visit him at any jail after sentencing. [*Id.*]. Movant claims that from November 1 through November 3, he made several phone calls to Mr. Peacock and left messages with the secretary stating he wanted to file an appeal but was told that counsel was not in the office or to call back later. [*Id.* at 17]. According to Movant, he called Mr. Cohen several days later and told him he was unable to reach Mr. Peacock and that Mr. Peacock gave the court an erroneous good-time calculation to the court at the sentencing hearing. [*Id.*]. Movant claims that Mr. Cohen stated he did not know how the calculation error could be rectified but that he would tell Mr. Peacock to contact Movant. Mr. Peacock did not contact Movant on his own or through Mr. Cohen. [*Id.*].

At the evidentiary hearing in this case, Movant testified that while he was at West Palm Beach jail, he tried calling Mr. Peacock and sent him emails but Mr. Peacock did not respond. [Evid. Hear. Tr. at 16]. Movant testified that, after the 14-

day appeal period had concluded, he sent an email to Mr. Peacock stating that he wanted to discuss an error in the sentencing memorandum, but Mr. Peacock did not respond. [*Id*.]. Movant stated he made copies of emails and other legal documents in preparation for the hearing, but the Bureau of Prisons lost or misplaced them upon transferring him to appear for the hearing. [*Id*. at 16-17]. Movant admitted that, although he was unable to reach Mr. Peacock, he was able to reach Mr. Cohen. Yet, he never asked Mr. Cohen, who was co-counsel, and did not discuss an appeal with him. Movant claimed that he did not ask Mr. Cohen to file an appeal because he thought an appeal was filed. Movant stated he learned the appeal was not filed when Mr. Cohen sent the requested docket sheet and learned of it during the second week of December 2017, less than two months after the sentencing hearing. [*Id*. at 17, 19]. Movant claims he did not reach out to either counsel, but instead, filed the instant habeas proceeding in October 2018. [*Id*. at 17, 20].

The government declined to cross-examine Movant; however, the undersigned had additional questions related to Movant's testimony and solicited the following. Movant specifically denied ever asking Mr. Cohen to file a notice of appeal on his behalf because it was his understanding that Mr. Cohen was "not really [his] attorney." [*Id*. at 20]. Movant then contradicted his earlier statement, claiming that after he received the copy of the docket he called Mr. Cohen and asked why there was no appeal and was told he "didn't know." [*Id*. at 21]. Movant stated he did

17

not ask Mr. Cohen to reach out to Mr. Peacock at that time. [*Id*. at 21-22]. Movant further stated that he *did* attempt to call Mr. Peacock from the jail after that time. [*Id*. at 22].

Mr. Peacock appeared at the evidentiary hearing and testified that he has been a Federal Public Defender since 1986. [Evid. Hear Tr. at 28]. Mr. Peacock further testified that he would never refuse to file an appeal if requested because a defendant has the right to an appeal. [*Id*. at 29]. Prior to the sentencing hearing, Mr. Peacock communicated with Movant by telephone and email regarding the representation and felt they had sufficient communication. [*Id*. at 33-34]

Mr. Peacock did not recall Movant ever asking him to appeal at sentencing nor did he recall telling Movant he would file an appeal. [*Id*. at 36-37]. Mr. Peacock explained:

> We received a ruling from Judge Hurley, who was an extremely tough judge in the circumstances that we thought was extraordinary. We actually -- Mr. Cohen did the part of the sentencing where he asked for the actual relief but Mr. Cohen asked for 360 months. Judge Hurley, because he was so impressed with Mr. Anderson's presence and his statement and Mr. Cohen's presentation and so on, went further than that and gave him 300 months instead. So we had actually gotten 60 months lower than what we asked for. The Government, in contrast, was asking for 40 years. So in the context of the ruling, I don't think anyone there was inclined to appeal.
>
> …

18

…I believe from Judge Hurley's remarks and also from Mr. Anderson's remarks to the Court, that Judge Hurley noted a significant change from when Mr. Anderson was younger.

[*Id*. at 37-38].

Mr. Peacock testified there were no communications from Movant asking to appeal -- no calls, no letters, no emails -- and did not remember receiving messages from his secretary. [*Id*. at 38-39]. Mr. Peacock stated he did not refuse any calls from Movant; and had he received such a call he knew that the time to file an appeal could be extended by thirty days. [*Id*. at 40]. On cross-examination, Mr. Peacock admitted that he did not recall having any discussion about whether Movant was satisfied with the result and wanted to appeal because, "we were ecstatic with the result that we got." [*Id*. at 51].

Lastly, Mr. Peacock said that Mr. Cohen did not communicate to him that Movant wanted to appeal. Mr. Peacock maintained he would have filed an appeal if asked. [*Id*. at 41]. On re-direct, Mr. Peacock elaborated:

> the reason that I would not have met with him was because I believed there was a general understanding between myself, Mr. Anderson and Mr. Cohen that the result was excellent…we had had such great luck and such good fortune between the Government's agreement to not proceed on procedural default and then Judge Hurley actually giving us 60 months less than what we asked for and which actually was Mr. Anderson's bottom line when I met with him prior to the sentencing. With all of that in mind, there was not a thought in my head that anyone would want to appeal that and there was no indication that anyone wanted to appeal that, otherwise I would have.

19

[*Id*. at 54-55].

Notwithstanding counsel's arguments at the evidentiary hearing that counsel had a duty to consult with Movant where a rational defendant would want to appeal or reasonably demonstrated an interest in appealing, ultimately, the undersigned finds that Movant's claim is disingenuous.[5] By his own admission, while attempting to reach Mr. Peacock about an appeal, he spoke with Mr. Cohen but never expressed to Mr. Cohen that he wanted to appeal. Mr. Cohen has represented Movant from the time of trial through the third sentencing hearing – nearly two decades. It simply does not make sense that he would not express his desire to appeal to Mr. Cohen directly, or tell Mr. Cohen to relay a message to Mr. Peacock that he wanted to appeal, and instead lay the failure to file an appeal at the feet of Mr. Peacock alone. It is implausible that Movant claims he did not believe that Mr. Cohen was "really my attorney." [Evid. Hear. Tr. at 20]. As previously narrated, Mr. Cohen filed a notice of appearance and presented lengthy argument on Movant's behalf at the third sentencing hearing. Movant asserted at the evidentiary hearing that he had no problem with the performance of either counsel at the hearing. [Evid. Hear. Tr. at 14].

---

[5] Mr. Entin directed the Court to review the recent opinion from the Eleventh Circuit in a recent case in this Court, *Rios v. United States*, 783 Fed. App'x 886 (11th Cir. 2019). The undersigned finds the case unpersuasive here because Movant's testimony at the evidentiary hearing is not credible.

Movant's assertions at the evidentiary hearing are unsupported by any objective evidence and contradicted by Mr. Peacock and, more importantly, himself. Movant provided no physical evidence nor any witness testimony on his behalf. The undersigned finds Movant's testimony under oath incredible.

Even when a defendant has not specifically instructed his counsel to file an appeal, in order to determine whether counsel performed deficiently, a court must inquire into whether counsel in fact consulted with the defendant about an appeal. *Roe v. Flores-Ortega*, 528 U.S. at 478. "If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case…If not, the court must further inquire whether the attorney had an affirmative duty to consult." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Roe v. Flores-Ortega*, 528 U.S. at 478). The duty to consult arises when either: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing. *Id*. (citing *Roe v. Flores-Ortega*, 528 U.S. at 480). "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe v. Flores-Ortega*, 528 U.S. at 484.

Here, Movant received a sentence below the life sentence he had previously received and below the forty-year sentence the government had requested. In fact,

his counsel noted that the sentence was lower that the 360-month sentence that they had expected. According to Mr. Peacock, everyone was surprised and pleased with the outcome under the circumstances. On this record, Movant has not established that he reasonably demonstrated an interest in appealing or that a rational defendant would want to appeal.

Movant cannot demonstrate deficiency under *Strickland*. Accordingly, **Claim 1** should be DENIED.

### B. Claim 2 – Counsel Was Not Ineffective for Failing to Raise Meritless Objections to the 4-Level Leadership Role Enhancement

In **Claim 2**, Movant claims Mr. Peacock was ineffective for failing to object to the 4-level leadership role enhancement because Movant and the cooperating codefendant were only in a "buyer-seller" relationship. [*Id.* at 6, 18]. The government incorrectly asserts that because Movant never challenged the leadership role, therefore, he may not do so now. [CV-ECF 20 at 5]. Alternatively, the government asserts that the claim fails on the merits. Movant's claim fails.

A summary of his role as a leader and organizer of a criminal activity involving more than five participants where he obtained drugs in Miami and sold them for profit in Atlanta is outlined in Movant's PSI. [PSI ¶s 19, 20, 21, and 22]. This PSI is supported by the evidence at trial establishing Movant's leadership role by the testimony of Thurston Blackmon [CV-ECF No. 46-2 at 6-8, outlining part of the narcotics scheme a to rob dealers of their drugs and money], Agent Flowers [CV-

ECF No. 46-4 at 162- 171, detailing his observation and video taping of the transactions], and Edgardo Diaz [CV-ECF No. 46-5 at 16-35, outlining his involvement in the conspiracy]. Therefore, the adjustment for Movant's role in the offense was warranted. Moreover, as narrated above, an objection would have been futile because under § 4B1.1(c)(2) Movant was convicted for violating § 924(c) and Movant carried the firearm during and in relation to a drug trafficking crime. He still would have been subject to a minimum guideline sentence of thirty years. Lastly, as to this claim, at Movant's evidentiary hearing, he testified that he did not have any issues with the performance of either attorney at the third sentencing hearing in getting him the sentence he ultimately received. [Evid. Hear. Tr. at 14].

Movant cannot demonstrate deficiency or prejudice under *Strickland*. Accordingly, **Claim 2** should be DENIED.

> *C. Claim 3 – Movant's Claim that Counsel Failed to Object to the Jury Instruction Regarding Constructive Possession is Controverted by the Record.*

In **Claim 3**, Movant claims he is "actually innocent" of § 924(c) in light of "*Bailey v. U.S.*" and that Mr. Cohen was ineffective at trial for failing to object to the court's erroneous jury instructions at trial directing jurors to find him guilty of constructive possession. [*Id.* at 8, 19]. The Government did not address **Claim 3** on the merits but instead asserts the court lacks jurisdiction because this habeas petition is an unauthorized successive. [CV-ECF No. 20 at 7-8]. The procedural bar is

inapplicable – Movant received a new judgment on October 31, 2017. The instant petition is timely filed and *not successive*. Moreover, because this claim was not previously addressed on the merits, *res judicata* does not apply. Nonetheless, Movant's claim fails.

At trial, Mr. Cohen challenged the jury instruction on aiding and abetting as inappropriate but admitted that constructive possession was encompassed in the statute. [CV-ECF No. 46-5 at 226]. The Court acknowledged and explained that aiding and abetting can be used to find the defendant guilty of the crime of possession of a firearm by a convicted felon and that possession may be actual or constructive. [CV-ECF No. 46-6 at 18]. The government would be required to show that Movant actually or constructively possessed the weapon. [*Id.* at 19; *see* full discussion at 19-20]. The court determined it would give the general instruction on possession including constructive and actual. [*Id.* at 20-22].

Even after the court instructed the jury, Mr. Cohen raised the issue again:

> Judge, I have one problem with the way the court instructed the jury[.] I believe when you were talking about possession, you referred that possession would refer to either Counts 3 or 4. Does not refer to Count 3. [It] [h]as to be more than possession, has to be using or carrying a firearm[;] and I think that may be a point that needs to be clarified. It is not part of the written instruction.

[*Id.* at 150-151].

The court responded that it believed counsel was correct. [*Id.* at 151]. Counsel continued to argue that simple possession was not enough for conviction. [*Id.* at 151-

152]. The government argued that constructive possession was enough for a § 924(c) conviction. [*Id.* at 152; *see also* full argument at 150-154]. The Court offered to send a note to the jury defining "in possession" to include being "available for immediate use" but, after further discussion, decided to "leave it as it is" in order to not confuse the jury. [*Id.* at 154-156].

Counsel is not ineffective where he fully challenged the matter at trial. Yet, statute encompassed constructive possession. The court would include constructive possession in the general instruction and would not issue further instructions in order to reduce confusion. In short, the instruction was not erroneous.

Finally, to the extent Movant attempts to assert an actual innocence claim, such a claim is insupportable. Courts have "equitable authority to invoke the miscarriage of justice exception to overcome expiration of the statute of limitations governing a first federal habeas petition." *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013). However, "[t]he miscarriage of justice exception…applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the movant].'" *Id.* at 394-95 (quoting *Schlup v. Delo*, 513 U.S. 298, 303 (1995)). This type of claim is commonly referred to as an "actual innocence" claim. *McQuiggin*, 569 U.S. at 392 (citation omitted); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Johnson v. Fla. Dep't Of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008) (quoting *Bousley*, 523 U.S. at 623). "Actual innocence claims must also be supported 'with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.'" *Rich v. Dep't of Corr. State of Fla.*, 317 F. App'x 881, 882 (11th Cir. 2008) (*per curiam*) (quoting *Schlup*, 513 U.S. at 324).

Movant bears the burden to adequately allege actual innocence. *Schlup*, 513 U.S. at 327. Furthermore, Movant bears the overall burden of proof under § 2255. *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (citing cases). No such showing has been made here. To the contrary, on the record before this Court, there was sufficient evidence at trial to support Movant's constructive possession. Moreover, as narrated above, there is no prejudice where Movant filed a statement acknowledging his participation in the charged offenses and his knowledge that Anderson, the co-defendant, was carrying a 40-caliber Glock during the drug transaction. [CR-ECF No. 154 at 2].

Accordingly, because Movant's fails to satisfy either prong of *Strickland* and cannot demonstrate actual innocence, **Claim 3** should be DENIED.

### D. Claim 4 – Movant's Claim that Counsel Was Ineffective for Failing to Object to a Redacted Indictment Presented to the Jury is Controverted by the Record

Movant claims he is "actually innocent" because Mr. Cohen was ineffective at the trial for failing to object to the court's redaction of the indictment as to the type of firearm possessed by Movant. [*Id.* at 9, 20]. According to Movant, at trial, Witness Anderson testified the firearm was a nine-millimeter in contrast to the Indictment which identified 40-caliber Glock semiautomatic pistol; therefore, the government was required to make a finding as to Glock pistol. [*Id.* at 20]. The Government did not address **Claim 4** on the merits; and, like Claim 3, it asserts the petition is an unauthorized successive. [CV-ECF No. 20 at 7-8]. As previously narrated, Movant's new judgment means his petition is timely filed and *not successive*. This claim was not previously addressed on the merits; thus, *res judicata* does not apply. Movant's claim is somewhat disingenuous and fails on the merits.

There is no indication in the trial transcript that the jury was provided with a redacted indictment. Rather, it appears that there was ample evidence that the firearm was a 40-caliber Glock. First, the government explained in opening statements that Count 3 of the indictment charged that Movant "knowingly used or carried a firearm…a 40[-]caliber Glock." [CV ECF No. 46-4 at 148]. Also, Agent Flowers testified that, in his presence, Detective Willie and Agent Shorentino found a Glock pistol (with a certain serial number) behind the driver seat of Movant's Maxima; and

the gun was admitted into evidence and identified by Flowers as "the Glock 40[-]caliber handgun." [*Id.* at 189]. Movant's claim references Dante Anderson's testimony that *two weeks prior to the arrest*, Movant told him to "pick up the car and take the gun out and hold it until he [got] back" and the gun, at that time, was a "nine [-] millimeter Glock." [CV-ECF 46-5 at 85-86]. Special Agent Higgins also confirmed the identification of the 40-caliber Glock. [*Id.* at 164]. Moreover, the parties entered a written stipulation that the Glock firearm was found in Movant's vehicle and that the government satisfied its burden in proving the two elements of § 922(g). [*Id.* at 167]. The stipulation was signed by the government, defense counsel, and Movant. [*Id.*].

Ultimately, Movant's claim is controverted by the record. Counsel was not deficient for failing to object to a redaction where, throughout trial, the jury was on notice that a 40-caliber Glock firearm supported the § 922(g) charge. Counsel is not required to raise meritless objections. *See generally Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection). Finally, the undersigned sufficiently addressed Movant's claims of actual innocence under Claim 3 and does not repeat the analysis here.

Movant cannot satisfy either prong of *Strickland*; thus, **Claim 4** is due to be DENIED.

## VII.   Evidentiary Hearing

28

While the Court granted an evidentiary hearing as to Claim 1, Movant is not entitled to an evidentiary hearing on the remaining claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). *See also Townsend v. Sain*, 372 U.S. 293, 307 (1963); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (holding that § 2255 does not require that the district court hold an evidentiary hearing every time a Section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

## VIII.    Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability (COA). *See* 28 U.S.C. § 2253 (c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."

*See* 28 U.S.C. § 2253 (c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record as a whole, this Court should deny a certificate of appealability because reasonable jurists would not find the court's conclusion tobe debatable or wrong. Notwithstanding, if Movant does not agree, he may bring this argument to the attention of the District Court Judge in objections.

## IX.    Recommendation

Based on the foregoing, it is recommended that the motion to vacate be DENIED on the merits, that no certificate of appealability issue, and, that this case be CLOSED.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a *de novo* determination by the District Court Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149 (1985).

SIGNED this 8th day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

30

cc:    Alvin Ernest Entin
Entin Law Group, P.A.
633 South Andrews Avenue, Suite 500
Fort Lauderdale, FL 33301
954-761-7201
Fax: 764-2443
Email: aentin@hotmail.com
Counsel for Movant

Shannon Kelley Shaw
United States Attorney's Office
Southern District of Florida
99 NE 4th Street
Miami, FL 33132
305-961-9374
Email: shannon.shaw@usdoj.gov